2020R01035/JPG

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Hon. |
| | : | |
| | : | Crim. No. 22-397 (RBK) |
| v. | : | |
| | : | 7 U.S.C. § 136j |
| | : | 18 U.S.C. § 1343 |
| PAUL ANDRECOLA | : | 18 U.S.C. § 287 |
| | | 18 U.S.C. § 2 |

**I N F O R M A T I O N**

The defendant having waived in open court prosecution by Indictment, the United States Attorney for the District of New Jersey and the Assistant Attorney General for the Environment and Natural Resources Division of the United States Department of Justice charge:

1. At all times relevant to this Information, unless otherwise indicated:

**Background and Relevant Parties and Entities**

a. Company-1 was a chemical formulation and manufacturing company co-owned and operated by the defendant Paul Andrecola ("ANDRECOLA").

b. Company-2 was a company that produced lubricants and cleaning products. ANDRECOLA was the chief director of research and development and formulations for Company-2.

c. Company-3 was a company that sold sanitizers and disinfectants. Company-3 also sold a disinfectant called GCLEAN GC200.

    d.  Company-1, Company-2, and Company 3 (the "Companies") were all located in, and operated out of, Mount Laurel, New Jersey.

    e.  ANDRECOLA, on behalf of the Companies, sold sanitizer and wipe pesticide products in the names GCLEAN and/or GC200, which were not registered by the U.S. Environmental Protection Agency ("EPA") in accordance with the Federal Insecticide, Fungicide and Rodenticide Act.

**The Federal Insecticide, Fungicide and Rodenticide Act ("FIFRA")**

    f.  FIFRA regulated the production, sale, distribution, and use of pesticides in the United States. A "pesticide" was any substance or mixture of substances intended for preventing, destroying, repelling, or mitigating any pest. 7 U.S.C. § 136(u); 40 C.F.R. § 152.3. The term "pest" was broadly defined to include, among other things, viruses, bacteria, or other micro-organisms. 7 U.S.C. § 136(t).

    g.  FIFRA required all pesticides to be registered with the EPA before they could be sold or distributed. 7 U.S.C. § 136a(a). The registration process was detailed, and applicants were required to submit a substantial amount of information to the EPA in support of a request for registration. Items of information that must be submitted in support of an application to register a pesticide included the complete formula of each pesticide for which registration was sought, including the identity of its active and inert ingredients; all proposed labeling for the pesticide; and a statement of all pesticidal claims to be made for the pesticide. 7 U.S.C. § 136a(c); 40 C.F.R. § 158.155.

h. Registered pesticides were given a product-registration number beginning with the phrase "EPA Reg. No." Pesticide-producing establishments also received an establishment-registration number designated by the phrase "EPA Est." 40 C.F.R. § 156.10(e) and 156.10(f). As a condition of registration, all registered pesticides were required to have a label bearing both the product registration and establishment numbers. 40 C.F.R. § 156.10(a) and 156.10(e). Proposed labels were required to be submitted to the EPA along with the application for registration. 40 C.F.R. § 152.50(e).

i. Antimicrobial pesticides were subject to specific antimicrobial pesticide data requirements to be registered by the EPA. 40 C.F.R. Part 158, Subpart W. All antimicrobial pesticide applicants for registration must have ensured through testing that their product was effective when used in accordance with label directions and commonly accepted pest control practices. 40 C.F.R. § 158.2220(a)(1). An antimicrobial pesticide that made "public health claims" must have been supported by additional product performance data required by the EPA as part of the application for registration. 40 C.F.R. § 158.2220(a)(2). An antimicrobial pesticide product was considered to make a "public health claim" if the product bore a claim to control pest microorganisms that posed a threat to human health, and whose presence could not be readily observed by the user. 40 C.F.R. § 158.2204(a).

j. The EPA had published for the public a list of EPA-registered products that it deemed to be effective against SARS-CoV-2, titled "List N: Disinfectants for Use Against SARS-CoV-2." However, even if a disinfectant had been added to List N, its registrant could not make claims on the

disinfectant's label that it was effective against SARS-CoV-2, unless approved by EPA. The only claims that could be made were that the product had demonstrated effectiveness against viruses similar to SARS-CoV-2; that COVID-19 was caused by SARS-CoV-2; and that the product killed similar viruses and therefore could be used against SARS-CoV-2 when used in accordance with the directions for use.

      k.    It was unlawful for any person in any state to distribute or sell to any other person a pesticide that had not been registered with the EPA under FIFRA. 7 U.S.C. § 136j(a)(1)(A). FIFRA defined "distribute or sell" to include not only actual sale or distribution of a pesticide, but also the act of offering a pesticide for sale. 7 U.S.C. § 136(gg); 40 C.F.R. § 152.3.

## COUNT ONE
### (Sale of an Unregistered Pesticide)

2. The allegations in paragraph 1 of this Information are re-alleged here.

3. From at least as early as in or around March 2020 through on or about May 2021, in Burlington County, in the District of New Jersey and elsewhere, the defendant,

**PAUL ANDRECOLA**,

knowingly distributed and sold to another person a pesticide, namely, sanitizer and wipe disinfectant products in the names GCLEAN and GC200, that was not registered by the United States Environmental Protection Agency, as required by Title 7, United States Code, Section 136(a).

In violation of Title 7, United States Code, Sections 136j(a)(l)(A) and Section 136*l*(b)(l)(B), and Title 18, United States Code, Section 2.

5

## COUNT TWO
## (Wire Fraud)

4. The allegations in paragraph 1 of this Information are re-alleged here.

### The Scheme and Artifice to Defraud

5. From at least as early as in or around March 2020 through in or about May 2021, in Burlington County, in the District of New Jersey and elsewhere, the defendant,

### PAUL ANDRECOLA,

did knowingly and intentionally devise and intend to devise a scheme and artifice to defraud numerous victims, and to obtain money and property from these victims, by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing and attempting to execute such scheme and artifice to defraud, did transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, including a wire communication from inside New Jersey to outside New Jersey, as more fully set forth below.

### The Goal of the Scheme to Defraud

6. The goal of the scheme and artifice to defraud was for defendant ANDRECOLA to enrich himself by fraudulently selling various unregistered pesticides, namely disinfectant products including sanitizers and wipes in the names GCLEAN and/or GC200, to numerous victims, under false pretenses, based on ANDRECOLA'S false representations that these products were EPA-

6

registered pesticide products on EPA's "List N: Disinfectants for Use Against SARS-CoV-2" that EPA deemed to be effective against SARS-CoV-2.

**Manner and Means of the Scheme to Defraud**

7. It was part of the scheme and artifice to defraud that:

    a. Throughout the scheme, ANDRECOLA falsified, or caused to be falsified, various EPA-produced documents to falsely represent that various sanitizer and wipe products in the names GCLEAN and/or GC200 were EPA-registered products that appeared on EPA's "List N: Disinfectants for Use Against SARS-CoV-2."

    b. It was further part of the scheme that ANDRECOLA, or others at his behest, would send emails to potential customers of these products, informing them that these products were EPA-registered pesticide products, which were on EPA's "List N: Disinfectants for Use Against SARS-CoV-2," and were effective in killing SARS-CoV-2.

    c. It was further part of the scheme that ANDRECOLA, or others at his behest, would provide this falsified documentation to potential customers, falsely representing that various sanitizer and wipe products in the names GCLEAN and/or GC200 were EPA-registered products on EPA's "List N: Disinfectants for Use Against SARS-CoV-2," to persuade them to purchase the unregistered pesticide products.

    d. It was further part of the scheme that ANDRECOLA, or others at his behest, from the Companies facility in Mount Laurel, New Jersey, produced and sold these unregistered pesticide products to more than 150 victims based upon these false representations for a profit of approximately $2,741,833.90.

These communications occurred with, and the products were shipped to, victims located in more than 20 states throughout the country. The victims who purchased these unregistered pesticides included a police department in Delaware, a fire department in Virginia, a medical clinic in Georgia, a janitorial supply company in New York, and a school district in Wisconsin.

e. As an example of these communications, on or about August 13, 2020, ANDRECOLA, sent an email from New Jersey to a representative for Victim-1, a company located in Las Vegas, Nevada and Orlando, Florida. This email contained altered documents attached to the email, which falsely indicated that "GClean GC200 Disinfectant Wipes" was a registered pesticide with the EPA. As a result of this email and other communications falsely representing that these GC200 Wipes were registered pesticides approved to kill the COVID 19 virus, Victim-1 purchased more than $1,000,000 worth of product that was in actuality not a registered pesticide with EPA, nor on EPA's "List N: Disinfectants for Use Against SARS-CoV-2."

### Execution of the Scheme

8. On or about August 13, 2020, in Burlington County, in the District of New Jersey and elsewhere, the defendant,

**PAUL ANDRECOLA**,

having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, did knowingly and intentionally transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce for the purpose of executing such scheme and

artifice certain writings, signs, signals, pictures, and sounds, namely, an email with altered documents attached to the email, which falsely represented that GClean GC200 Disinfectant Wipes was an EPA registered pesticide effective against SARS-CoV-2.

    In violation of Title 18, United States Code, Sections 1343 and 2.

## COUNT THREE
## (False Claim Against the United States)

9. The allegations in paragraph 1 of this Information are re-alleged here.

10. Between April 30, 2020 and September 29, 2020, in Burlington County, in the District of New Jersey and elsewhere, the defendant,

**PAUL ANDRECOLA**,

did knowingly make and present, and cause to be made and presented—to the United States Marshal Service, Moody United States Air Force Base, the United States Veterans Affairs Department, and the Willamette National Forest Service—false, fictitious, and fraudulent claims to the United States for payment, in that he sold each a registered pesticide purportedly effective against SARS-CoV-2, knowing such claim to be false, fictitious, and fraudulent

In violation of Title 18, United States Code, Section 287 and Section 2.

## FORFEITURE ALLEGATION AS TO COUNT TWO

11. The allegations in this Information are incorporated by reference as though set forth in full herein for the purpose of alleging forfeiture pursuant to Title 18, United States Code, Section 981 (a)(1)(C) and Title 28, United States Code, Section 2461.

12. Upon conviction of the offense charged in Count Two of this Information, the defendant,

**PAUL ANDRECOLA**,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(l)(C) and Title 28, United States Code, Section 2461(c), all property, real and personal, the defendant obtained that constitutes or is derived from proceeds traceable to the commission of the said offense, and all property traceable thereto.

### Substitute Assets Provision
### (Applicable to All Forfeiture Allegations)

13. If any of the property described above, as a result of any act or omission of the defendant:

    a.    cannot be located upon the exercise of due diligence;

    b.    has been transferred or sold to, or deposited with, a third party;

    c.    has been placed beyond the jurisdiction of the court;

    d.    has been substantially diminished in value; or

    e.    has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1) and Title 28, United States Code, Section 2461(c), to seek forfeiture of any other property of such defendant up to the value of the forfeitable property described above.

PHILIP R. SELLINGER
United States Attorney
District of New Jersey


TODD KIM
Assistant Attorney General
Environment and Natural
Resources Division
U.S. Department of Justice